GLOUCESTER MANUFACTURING COMPANY *vs.* HOWARD FIRE INSURANCE COMPANY.

It is within the authority of an agent of an insurance company, who is entrusted with printed forms of policies, signed by the officers of the company, to be filled out, countersigned and issued by him, to add to the policy, before it is delivered or accepted or the premium paid, a memorandum that the building insured is in the course of construction; and such memorandum will be binding on the company, even if the building appears, by the application, to be finished, and the conditions of insurance, to which the policy is made subject, provide that applications for insurance should be in writing, and specify the construction, materials, character and occupation of the building to be insured, and be deemed a part of the policy and warranty on the part of the assured; and even if the agent, though instructed by the company to make monthly returns of the written parts of all policies, does not inform them of this memorandum until after the fire.

42 *

This warranty in a policy of insurance on buildings in the course of construction, " water tanks to be well supplied with water at all times," is complied with, if the tanks at the commencement of the risk are reasonably advanced towards completion, compared with the then state of the buildings, and their construction is afterwards continued with reasonable dispatch until the time of the fire.

ACTION OF CONTRACT on a policy of insurance on the plaintiffs' bleachery in Gloucester, N. J. for one year from the 9th of October 1851, alleged to have been made on the 8th of December 1851.

The written part of the policy, after describing the buildings, added : " Being more fully described and set forth in survey No. 3950, upon which this policy is based, and all conditions therein named to be fully complied with." The policy declared " that this policy is made and accepted in reference to the conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for."

Among these conditions of insurance were the following : ' 1. Applications for insurance should be in writing, and specify he construction and materials of the building to be insured, or containing the property to be insured ; by whom occupied ; whether as a private dwelling, or how otherwise ; its situation with respect to contiguous buildings, and their construction and materials ; and whether any manufactory is carried on in or about it." " 3. If during the insurance the risk be increased by the erection of buildings, or by the use or occupation of neighboring premises, or otherwise, or if for any cause the company shall so elect, it shall be optional with the company to terminate the insurance, after notice given to the assured or his representative of their intention to do so ; in which case the company will refund a ratable portion of the premium." " 5. No insurance, whether original or continued, shall be considered as binding, until the actual payment of the premium." " 8. This company will not be liable for damage to property by lightning, aside from fire, nor for damage occasioned by the explosion of a steam boiler." " 17. When a policy is made and issued upon a survey and description of certain property, such survey and description shall be taken and deemed to be a part and portion of such policy, and warranty on the part of the assured."

The application or survey was dated October 9th 1851, and in answer to interrogatories in behalf of the defendants, described the building insured as " Bleachery new, and on the most approved plan of building ; " " brick and wood, with slate roof ; " " stoves, furnaces, funnels, flues and apparatus for heating or using fire, properly secured ; " and contained the following question and answer : " Will you engage that the ashes in and around your buildings shall be kept in a safe place ? " *Answer.* " Yes. Watchman employed and always on duty during the night season and on Sundays. Water tanks to be well supplied with water at all times. No smoking or drinking allowed in or about said building." The application further contained a covenant " that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicants, and are material to the risk ; " and indorsed upon it was a plan showing a " large tank of water, 20 feet high," by the side of the building.

The policy was signed by the defendants' president and secretary, and was " countersigned at Philadelphia this fourteenth day of October A. D. 1851. Gillett & Coggeshall, agents." In the margin was the following memorandum in writing : " December 8th 1851. The buildings herein named to be occupied as bleach and dye house. It is hereby understood that this company shall be liable for any losses which may be caused by fire from the bursting of the boilers, notwithstanding the exceptions named in this policy. No exception of any articles used in dyeing and bleaching, or such as result from the kind of business. Privilege of heating said buildings with stoves. Buildings in course of construction.                Gillett & Coggeshall, agents."

The trial was before *Thomas*, J., who made the following report thereof : The plaintiffs proved that Gillett & Coggeshall, for some time before the 9th of October 1851, were the agents of the defendants at Philadelphia, advertised as such in the newspapers, and were entrusted with policies, like the one declared upon in all their printed parts, signed by their president and secretary, and to be filled up, indorsed, countersigned and

issued by said agents ; that the policy declared on was made out and countersigned by said agents on the 14th of October 1851, with the exception of the memorandum in the margin, and remained in their possession until the 8th of December, when the plaintiffs' treasurer called for it, and, on examination, refused to receive it in that form, and thereupon said agents made and signed the memorandum in the margin, and said treasurer took the policy and paid them the premium.

The defendants offered to prove that Gillett & Coggeshall were directed to send to the defendants, at the end of each month, copies of the written parts of all policies issued by them, and of any indorsements thereon made by them ; but it was not proved that these directions were complied with, or were known to the plaintiffs. It was proved that said agents, about the 1st of November 1851, without the plaintiffs' knowledge, sent the defendants a copy of the written portion of this policy, and of the survey, and paid them the amount of the premium ; and that the defendants' officers did not know of the memorandum of December 8th, or that the buildings insured were in the course of construction, until after they were burnt. The loss by fire within the time, and due notice thereof, were admitted.

The defendants also offered to prove, by parol, that Gillett & Coggeshall were not authorized to dispense, by indorsement or otherwise, with any of the requirements of the conditions upon which the policies were issued, or with a full, true and exact description of the buildings insured and the risk assumed in the survey or application to be signed by the assured. This evidence was objected to by the plaintiff, and rejected by the court.

It was also proved that when the application was signed, and until the loss, the buildings insured were not completed, but in the course of construction, and that there were no water tanks upon the premises, but a tank had been begun in the place and of the size designated in the plan annexed to the application, and others elsewhere, and that the plaintiff had proceeded in the construction of these tanks as fast as is usual in the construction of a bleachery, and without unreasonable delay.

Upon this evidence, the court, for the purposes of the trial,

ruled that if the plaintiffs did not pay the premium on the policy until the 8th of December, and the policy was not delivered to them until that time, and their agent refused to take it until the indorsement of December 8th 1851 had been made by Gillett & Coggeshall, then the defendants would be bound by such indorsement; and that, upon the facts proved, the plaintiffs were not bound to have tanks in the building insured, filled with water at all times from the commencement of the risk, or to show that there was a large tank in the place indicated on the plan from the commencement of the risk; but that if these tanks were in a reasonable state of forwardness towards completion, compared with the state of the buildings insured, and if the buildings and tanks were being finished and constructed up to the time of the fire with reasonable dispatch and with no unnecessary delay, then the plaintiffs would be entitled to re cover upon this part of the case. A verdict was taken for the plaintiffs ; to be set aside, if the rulings were not correct.

*C. W. Loring*, for the plaintiffs.

*J. G. Abbott & B. Dean*, for the defendants. The printed forms of policies sent by the defendants to their agents limited their authority in dealing with strangers, as to matters provided for therein ; and the agents had no power to make policies upon terms inconsistent with the printed portions, without the express or implied consent of the defendants. The memorandum of December 8th undertakes to charge the defendants without the description in the survey, required by the first and seventeenth conditions, and contrary to those conditions and to the eighth.

The survey, being made part of the warranty in the policy, must be strictly complied with in all its parts ; and therefore if the words " buildings in the course of construction " are to be deemed to be added, by the memorandum, to the description in the survey, still the warranty of " water tanks to be well supplied with water at all times," being a warranty which may well apply to a building in the course of construction, applies to the buildings as well before as after they are finished. *De Hahn* v. *Hartley*, 1 T. R. 343. *Newcastle Fire Ins. Co.* v. *Macmorran*, 3 Dow, 255. *Vose* v. *Eagle Life & Health Ins. Co.* 6 Cush. 47.

*Houghton* v. *Manuf. Mutual Fire Ins. Co.* 8 Met. 114. *Jennings* v. *Chenango County Mutual Ins. Co.* 2 Denio, 75.

DEWEY, J.   This case presents the question of the agency of Gillett & Coggeshall under circumstances indicating a very general and extended agency as to issuing policies in behalf of the defendants.   These agents were furnished with blank policies, which were to be filled up, indorsed and issued at their discretion..   It is fully conceded that, as to the rate of premium, the amount of the risk, and the nature of it, the power of these agents was unlimited.   If the memorandum or indorsement of December 8th 1851 had been made by these agents upon this policy at the time of its original date, and before any other proceedings had taken place, we apprehend it would have been quite clear that it would have constituted a part of the policy, and properly be referred to as explanatory of the nature of the risk.   It was not however indorsed on the policy at the time that the policy was countersigned by the agents, on the 14th of October 1851.   The question then arises as to the power and authority of the agents to make this indorsement at the later period of December 8th 1851.

Had the plaintiffs received their policy on the 14th of October 1851, and paid the premium therefor, it might present a very different question from that now before us, which must be decided upon its own peculiar facts.   Among these facts is the important one, that the policy had never been delivered, no premium paid by the plaintiffs, and nothing done which would have secured to the plaintiffs the benefits of the policy, had any loss by fire occurred to the property before the 8th of December.   On the last named day, the plaintiffs, upon examination of the policy as originally prepared, refused to take it in the form in which it then was.   At that time no policy had been delivered.   These agents were clothed with general powers, as to filling up and issuing policies.   Having the authority to make an original contract of insurance, with terms similar to those found in this policy, they had authority, before the delivery of the policy, to enlarge it from its first draft, by a change or modification of the description of the property insured, so as to embrace

the case of a building unfinished, but then in the process of construction. This they did, and the policy in this form was accepted by the plaintiffs; and, as between insurers and assured, this contract was entered into on the 8th of December, and is to be treated as of that date.

If the agents of the defendants failed to transmit to their principals a copy of the written part of this policy, as it existed at the time of its delivery on the 8th of December, with the change in the description of the state and situation of the property insured, from that which they had forwarded to the defendants in the month of November previous, the responsibility for such omission is not upon the plaintiffs.

We are of opinion that this policy is to be taken to be a policy " upon buildings in course of construction."

The further inquiry then arises, as to the effect which this qualification of the original description of the risk is to have upon the stipulation as to " water tanks well supplied with water at all times." It is contended, on the part of the defendants, that this stipulation is equally operative, and requires a like literal compliance, if the policy be applied to buildings in the course of construction. But the court are of opinion that the insurance on the property having been modified, so as to be an insurance " upon buildings in the course of construction " at the time of issuing the policy, the statements in the application must be taken to be made with reference to such state of the buildings, and require a performance of the conditions or stipulations adapted to that state of things. The water tanks were to be supplied with all reasonable diligence, having reference to the progress in the construction of the building insured. The plaintiffs were not, under such a policy upon buildings in the course of construction, required to have at all times, from the first moment the policy issued, " water tanks well supplied with water at all times," in the manner, and to the extent, they would have been required to have had them, had the policy been upon a finished building.

*Judgment on the verdict for the plaintiffs.*